# SHEET METAL, ROOFING, VENTILATING

# AND AIR CONDITIONING

# CONTRACTING DIVISIONS OF THE

# CONSTRUCTION INDUSTRY

AGREEMENT entered into between ___DFS HVAC___

hereinafter referred to as the *"EMPLOYER"*, and LOCAL UNION 38

of the Sheet Metal Workers' International Association (SMWIA),

hereinafter referred to as the *"UNION"* for:

### COUNTIES

**New York:**

Westchester

Putnam

Dutchess

Orange

Rockland

Sullivan

Ulster

**Connecticut:**

Fairfield

Litchfield

**EFFECTIVE:** May 1, 2002        **TERMINATES:** April 30, 2012

## TABLE OF CONTENTS

**PAGE**

Geographical.................................................................................................... cover

Scope of Work.......................................................................................    1

Local Shop, Fan Maintenance, Spiral and Flexible
Duct, Preservation of Work, Referral..................................................    1 - 3

Securing Work, Work to be Performed
Statements, Definition of Work.............................................................    3 - 4

Membership in Union, Regular Work Hours, Holidays,.....................    4 - 5

Travel, Show-UpTime, Layoff Procedure, Overtime Pay...................    5 - 6

Shift Work, Shop Steward, Foreman.....................................................    6 - 7

Additional Transportation, Two Man Rule...........................................    8 - 9

Industry Fund.......................................................................................    9 - 10

Payment of Wage by Check, Electronic Transfer of
Paychecks.............................................................................................    10

Protective Equipment, Explosive Tools, Heated Shanties,
Installation of Ductwork, Vehicles, Loss of Tools.............................    11 - 12

Grievance Procedure............................................................................    12 - 14

Apprentices, Classified........................................................................    15 - 16

Funds, Billing Procedure, Bonds, Penalty,
Wage Increases, Work Assessment ....................................................    16 –21

Signature Page ....................................................................................    21

# ARTICLE I

**SECTION 1.** This Agreement covers the rates of pay and conditions of employment of all employees of the employer engaged in, but not limited to the:

(a) Manufacture, fabrication, assembling, handling, erection, installation, dismantling, conditioning, adjustment, alteration, repairing, and servicing of all metal work and all other materials used in lieu thereof and of all air-veyor systems and the fabrication and erection of duct systems of fiberglass, plastic, or any other material;

(b) the preparation of all shop and field sketches whether manually drawn or computer assisted used in fabrication and erection, including those taken from original architectural and engineering drawings or sketches;

(c) Air handling systems regardless of material used, including setting of all equipment and all reinforcements in connection therewith;

(d) all lagging over insulation and all duct lining; testing and balancing of all air-handling equipment and duct work; and all other work included in the jurisdictional claims of the Sheet Metal Workers' International Association.

**SECTION 2.** *LOCAL SHOP*

(a) Any local sheet metal contractor within the jurisdiction of Local Union (SMWIA) 38 is required to sign this Agreement and have a fabrication facility within the jurisdiction incorporating, but not limited to, an eight foot (8') brake, four foot (4') sheer, and an operational Pittsburgh Machine.

(b) Contractors must meet, where applicable, all Department of Labor Laws, demonstrate Proof of Insurance and give financial security for the payment of fringe benefits provided on applicable wage sheets.

**SECTION 3.** *FAN MAINTENANCE*

(a) In the operation of fans and blowers in buildings under construction, prior to completion and acceptance by the owner, a Journeyman Sheet Metal Worker shall be employed by the Sheet Metal Contractor to attend fans and blowers that may be placed in operation, except when the HVAC Sheet Metal Contractors have employees on the job site between 7:00 A.M. and 5:00 P.M.; the second or third shift shall consist of an eight (8) hour day. Starting times may vary.

(b) Shifts may not be less than eight (8) hours at the Journeyman's applicable straight time rate of pay.

(c) Under circumstances where other mechanical trades relinquish their jurisdiction over the fan maintenance, the Union agrees to also waive this requirement.

1

## SECTION 4. *SPIRAL DUCT*

Spiral duct shall not exceed twenty (20) feet in length and may be used only on high pressure, high velocity systems made airtight by mechanical means, such as welding, gasketing and/or caulking. Sprial duct may be used in low pressure systems if for architectural effect and if specified in the original design.

In addition, for a system to be considered high pressure, it must have pressure reduction devices such as one of the following:

(1) Pressure reducing valve with lined duct
(2) Pressure reducing valve with sound trap
(3) Attenuation box with pressure reducing valve

(4) Double duct or mixing box with valves
(5) Peripheral high velocity system

## *FLEXIBLE DUCT*

Flexible hose shall not exceed ten (10') feet in length from point to point in any one branch line.

## *MANUFACTURED ITEMS*

Fabricated round pipe and fittings along with adjustable elbows and adjustable neck take offs, grills, louvers, registers, and diffusers may be purchased under a yellow or blue label.

## **ARTICLE II**

## SECTION 1. *PRESERVATION OF WORK*

To protect and preserve for the Building Trades employees covered by this Agreement all work they have performed and all work covered by the Agreement, and to prevent any device or subterfuge to avoid the protection and preservation of work; it is agreed that all the work requiring sketching and/or fabrication shall be performed by employees hereunder, either in the shop or on the job site within the geographical jurisdiction of the Union.

(a)     The foregoing shall not be applicable to the manufacture for sale to the trade if purchase of the following items is under a yellow or blue label, unless otherwise specified:

1.   Ventilators
2.   Louvers
3.   Automatic and fire dampers
4.   Radiator and air conditioning unit enclosures
5.   Mixing (attenuation) boxes
6.   Plastic skylights

7.   Air diffusers, grills, registers
8.   Sound attenuators
9.   Chutes
10.  Double-wall panel plenums
11.  Angle rings
12.  Spiral Duct (as limited by this Agreement)

(b)     Ductwork to indicate Contractor name.

2

(c)    REFERRAL PROCEDURE - The Membership of Local Union 38 shall be at liberty to work for any local Contractor in signed Agreement.

(d)    Only certified sketchers, as approved by the Union, shall be engaged to prepare shop and field drawings or sketches.

## SECTION 2. *SECURING WORK*

Employers shall make every effort to secure all work included in the jurisdiction of the Sheet Metal Workers' Union and this Agreement.

If any employer accepts any job, by any contract or otherwise, and all of the work included in the jurisdiction of the Sheet Metal Workers' Union and this Agreement and considered part of the job normally but not included therein, employees covered by this Agreement and the Union shall have the right to refuse to perform any work on or for such a job.

In order to carry out the intent of the above paragraph, the Business Manager, or his duly authorized representative, shall have (a) the right to demand evidence in the way of purchase orders, invoices and/or checks, from any contractor to prove compliance with this and related paragraphs of this Agreement; and (b) immediate access to any shop where employees covered by this Agreement are employed.

## ARTICLE III

Employers agree that none but Journeymen, Apprentices and Classified Sheet Metal Workers shall be employed on any work described in Article I and further, for the purpose of proving jurisdiction, agree to provide the Union with written evidence on the employer's letterhead for certain specified items of work to be performed at job site prior to commencement of work at the site. List of such specific items, which may be revised from time to time, as agreed to and by and between SMACNA and SMWIA shall be provided to the employer.

Employers shall send Work to be Performed Statements and Letters of Assignment as soon as they enter into a contract to perform work in accordance with the Union Agreement. The Employer's sketcher will be responsible for providing this information. Non-compliance can result in a fifty dollar ($50) penalty.

## ARTICLE IV

### SECTION 1.

(a)    The Union agrees to furnish upon request by the employer duly qualified Journeymen, Apprentices and Classified Sheet Metal Workers in sufficient number as may be necessary to properly execute work contracted for the employer in the manner and under the conditions specified in this Agreement.

(b)    The Union shall continue to implement an Affirmative Action Program.

(c)    Subject to the applicable state laws, it is agreed that the parties to this Agreement will establish rules and regulations to maintain a drug free workplace.

(d)    The Union will continue to offer training and certifications to its members. It is mandated that all employers outside Local 38's jurisdiction must assume the cost of additional training, if any, for special training and certifications needed to complete a project.

## SECTION 2. *DEFINITION OF WORK*

(a)    Architectural Sheet Metal Work shall be defined as interior and/or exterior work, either done for waterproofing or decorative purposes, but not limited to such. This can include metal roofing, gutters, leaders, valley flashing, cornice work, skylights, chimney flashing and cover caps, interior and exterior soffits, storefronts, and countertops.

(b)    Specialty Work shall be defined as sheet metal work under the guidelines of Resolution 78. The total rate of pay for Saturday Specialty Work of time and one half, including all local and national benefits, shall be paid to the Sheet Metal Worker as wages.

## ARTICLE V

**SECTION 1.** The Employer agrees to require membership in the Union, as a condition of continued employment of all employees performing any of the work specified in Article I of this Agreement, within eight (8) days following the beginning of such employment, or the effective date of this Agreement, whichever is the later, provided the Employer has reasonable grounds for believing that membership is available to such employees on the same terms and conditions generally applicable to other members and the membership is not denied or terminated for reasons other than the failure of the employee to tender the periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership.

**SECTION 2.** If, during the term of this Agreement, the Labor-Management Relations Act of 1947 shall be amended by Congress in such a manner as to reduce the time within which an employee may be required to acquire union membership, such reduced time limit shall become immediately effective instead of and without regard to the time limit specified in Section 1 of this Article.

**SECTION 3.** The provisions of this Article shall be deemed to be of no force and effect in any State to the extent to which the making or enforcement of such provision is contrary to law. In any State where the making and enforcement of such provision is lawful only after compliance with certain conditions precedent, this Article shall be deemed to take effect as to involve employees immediately upon compliance with such conditions.

## ARTICLE VI

**SECTION 1.**

(a) Regular working days shall consist of eight (8) hours labor in the shop or on the job between 7:00 A.M. and 5:00 P.M., and the regular working week shall consist of five (5) consecutive eight (8) hour days labor in the shop or on the job, beginning with Monday and ending with Friday of each week.

(b) All full-time or part-time labor performed during such hours shall be recognized as regular working hours and paid for at the regular hourly rate.

(c) Employees shall be at their work stations prepared to start work at the designated time and provide eight (8) hours of labor for eight (8) hours' pay.

**SECTION 2.** *HOLIDAYS*

| | |
|---|---|
| New Year's Day | Good Friday |
| Memorial Day | Independence Day |
| Labor Day | Presidential Election |
| Thanksgiving | Day After Thanksgiving |
| Christmas Eve Day | Christmas Day |

Note: When a holiday falls on a Thursday, the day after (Friday) is also considered a holiday.

**SECTION 3.** *TRAVEL TIME*

Employers shall provide all additional transportation during regular working hours when traveling from shop to job, or job to job. When an employee uses his own transportation, he shall be reimbursed at the standard mileage rate as set forth by the U.S. Internal Revenue Service.

**SECTION 4.** *SHOW UP TIME*

When employees report to work at employer's discretion and are not put to work, they shall be paid the following:

(a) Show up at designated time and unable to start - 2 hours pay.
(b) Inability to continue work after 2 hours - 2 hours additional pay.
(c) Inability to continue work after 4 hours - 2 hours additional pay.

Under no circumstances shall the contractor be responsible for payment of more than an additional two hours of compensation.

**SECTION 5.** *LAYOFF PROCEDURE*

(a) Employers must notify the Union office by 12:00 noon and pay employee by 3:30 P.M., or one hour before quitting time should work hours be at different starting times.

(b) Employees of local contractors on layoff shall have all fringe benefits paid in full at the local union office not later than the 20th day of the month following layoff.

(c)     Employees of "out-of-town" contractors shall have all fringe benefit payments paid in full at the time of layoff.

(d)     Employees covered by this Agreement on the day of layoff, shall be given a STATE LAYOFF SLIP, if applicable.

## SECTION 6.  *OVERTIME*

(a)     Overtime work must be reported to the local union office before 3:30 P.M. on the day of such overtime.  In the case of Saturday and Sunday work, work shall be reported by 3:30 P.M. on the Friday preceding.

(b)     There will be a Local 38 Journeyman on all overtime.

(c)     Work outside of the regular established work hour shall be paid at one and one-half times the total hourly rate Monday through Saturday.

(d)     Double the hourly total package rate for all work performed on Sundays and Holidays.

(e)     Overtime work performed in the shop or on the job should be performed on a rotating basis.

## SECTION 7.  *SHIFT WORK*

Shift work will be allowed on all construction when established in the shop or in the field for a minimum of five (5) working days.  All man power to be employed to meet shift requirements must be employed from Local Union 38.  The Employer has the option to provide one (1) Foreman.

First Shift - Eight (8) hours pay for eight (8) hours worked.
Second Shift - Eight (8) hours pay for seven (7) hours worked.
Third Shift - Eight (8) hours pay plus ten percent (10%) for seven (7) hours worked.

Shift work performed on Saturdays shall be at one and one-half (1 1/2) times the hourly rate; Sundays and Holidays shall be at double the hourly total package.

When a contractor plans shift work, the Union business office must be notified seventy-two (72) hours before shift work starts, and must be confirmed in writing.

Retrofit work performed outside the regular work day in occupied buildings shall be performed under shift work conditions to be established by the local parties.

## SECTION 8.  *SHOP STEWARD*

(a)     There shall be a Union Steward on all jobs as well as in the shop, during all working hours where three (3) or more employees are employed; the Steward may not be transferred without notice to the Business Manager.

(b)    The Employer or duly authorized representative shall notify the Union Business Office and Steward seventy-two (72) hours in advance (excluding weekends and holidays) of laying off a duly appointed Steward.

If a dispute arises as to the proper performance of a Steward's duties, the Steward will remain on the job until a L.J.A.B. hearing takes place within seventy-two (72) hours, whenever possible, excluding Saturdays, Sundays, and Holidays. Unless the dispute is promptly resolved, it shall be resolved in accordance with Article X of this Agreement.

If either party fails to meet, such party shall be liable for one day's pay to the employee for each working day lost and another meeting shall be scheduled within twenty-four (24) hours; above mentioned penalty to be imposed upon the party not showing up for the meeting. This procedure shall be followed until the meeting is held.

The Steward shall be the third from the last man on the job or in the shop. In the event of a temporary shutdown, if the Steward is not the third man rehired on the job or in the shop, the Union shall have recourse to a grievance hearing under Article X; such hearings shall be held seventy-two (72) hours (exclusive of weekends and holidays) of the time the Steward is not rehired, and the same penalty as above shall apply. Steward shall be notified by the Employer when overtime work is necessary and given the names of the employees working overtime.

*FOREMAN*

There shall be a Local Union 38 foreman in every shop and every location where four (4) or more workers are employed. Ratios as follows:

| | |
|---|---|
| Up to four (4) workers | One (1) Foreman |
| Upon employment of 12th worker | Two (2) Foremen |
| Upon employment of 20th worker | General Foreman |
| | *plus* Two (2) Foremen |
| Upon employment of 28th worker | General Foreman |
| | *plus* Three (3) Foremen |

There will be one (1) additional Foreman upon the employment of each 8th worker thereafter.

On a job employing twelve (12) or more workers, the first Foreman shall be the Foreman through whom orders are issued to the other Foremen. All Foremen shall be Journeymen Sheet Metal Workers.

*GENERAL FOREMAN RATE OF PAY*    $ 6.50 above Journeyman rate

*FOREMAN RATE OF PAY*    $ 3.50 above Journeyman rate

## ARTICLE VII

**SECTION 1.** When employed in a shop or on a job, employees shall be governed by the regular working hours specified herein and shall provide for themselves necessary transportation within the said limits from home to shop or job at starting time and from shop or job to home at quitting time, and the Employer shall provide, or pay, for all necessary additional transportation during working hours.

**SECTION 2.** When employed outside of the limits specified in Section 1 of this Article, and within the jurisdiction of the Union, employees shall provide transportation for themselves which will assure their arrival at the limits specified in Section 1 of this Article at regular starting time, and the Employer shall provide or pay for all additional transportation for such jobs, including transportation from such job back to the limits specified in Section 1 of this Article which will assure arrival at such limits at quitting time. As an alternative to the foregoing method, travel expenses may be paid by a zone or other method of payment.

## ARTICLE VIII

**SECTION 1.** The minimum rate of wages for Journeymen Sheet Metal Workers covered by this Agreement when employed in a shop or on a job shall be per applicable wage sheets.

**SECTION 2.** On all work specified in Article I of this Agreement, fabricated and/or assembled by Journeymen, Apprentices, and/or Classified Sheet Metal Workers within the jurisdiction of this Union, or elsewhere, for erection and/or installation within the jurisdiction of any other local union affiliated with Sheet Metal Workers' International Association, whose established wage scale is higher than the wage scale specified in this Agreement, the higher wage scale of the jobsite Union shall be paid.

**SECTION 3.** Provisions of Section 2 of this Article shall not be applicable to AIR POLLUTION CONTROL SYSTEMS fabricated for the purpose of removing air pollutants, excluding air conditioning, heating, ventilation, and smoke purge systems. In addition, the provisions of Section 2 of this Article will not be applicable to the manufacture of spiral pipe and/or fittings for high pressure systems.

**SECTION 4.** Except as provided in Sections 2 and 6 of this Article, the Employer agrees that Journeymen Sheet Metal Workers hired outside the territorial jurisdiction of this Agreement shall receive the wage scale and working conditions of that local Agreement.

**SECTION 5.** When the Employer has any work specified in Article I of this Agreement and within the area covered by another Agreement with another local union affiliated with the Sheet Metal Workers' International Association, and qualified sheet metal workers are available in such area, he may send no more than two (2) Sheet Metal Workers per job site into such area to perform any work which the Employer deems necessary. All additional Sheet Metal Workers shall come from the area in which the work is to be performed. Journeymen Sheet Metal Workers covered by this Agreement who are sent outside of the area covered by this Agreement shall be paid in accordance with applicable wage sheet, plus all necessary transportation, travel time, board and expenses while

employed in that area, and the Employer shall be otherwise governed by the established working conditions of the local Agreement. If employees are sent into an area where there is no local Agreement of the Sheet Metal Workers' International Association covering the area, then the minimum conditions of the home local union shall apply.

**SECTION 6.** In applying the provisions of this Article, the term "wage scale" shall include the value of all applicable hourly contractual benefits in addition to the hourly wage rate provided in said Sections.

**SECTION 7.** Health benefit contributions shall not be duplicated. When Sheet Metal Workers are employed temporarily outside the jurisdiction of their home local, the Contractor agrees to transmit health contributions to the employee's home local.

The parties to this Agreement agree to establish a system for continuing health coverage for employees working temporarily outside the jurisdiction of the local collective bargaining agreement when health contributions are transmitted on their behalf by trust funds from other areas.

**SECTION 8.** Each employer covered by this Agreement shall employ at least one (1) Journeyman Sheet Metal Worker who is not a member of the firm on all work specified in Article I of this Agreement.

**SECTION 9.**

(a)     Effective May 1, 2002, the Employer shall pay contributions to the Sheet Metal Contractors Industry Fund of Southeastern New York on each hour worked by each employee of the Employer covered by this Agreement at an amount set forth on the APPLICABLE WAGE SHEET. Effective May 1, 2004, this contribution shall increase $0.02 per hour. Effective May 1, 2006, this contribution shall increase an additional $0.02 per hour.

(b)     Contributions will be used to promote programs of industry education, training, negotiation and administration of collective bargaining agreements, research and promotion, such programs serving to expand the market for the services of the Sheet Metal Industry, improve the technical and business skills of employers, stabilize and improve employer-union relations, and promote, support and improve the employment opportunities for employees. No part of any such payments, however, shall be used for any other purpose except as expressly specified above.

(c)     Local Industry Fund shall furnish to the Business Manager of the Union, not less often than semi-annually, written reports describing in reasonable detail the nature of activities in which it engaged or which it supports directly or indirectly with any of its funds. One time per year, the local industry fund shall include in such written report, a statement attested to by a certified public accountant and containing its balance sheet and detailed statement of receipts and disbursements.

(d)     Grievances concerning use of Local Industry Fund monies to which an employer shall contribute or for violations of other subsections of this Section shall be processed pursuant to Article X of this Agreement.

**SECTION 10.**  Effective as of the date of this Agreement, the Employers will contribute to all National Funds (per applicable wage sheets).

**SECTION 11.**  *PAYMENT OF WAGES BY CHECK*

Employers who desire to pay wages by check must first:

(a)     Request permission to do so, in writing, from the Union.

(b)     Obtain written approval from the State Department of Labor, where applicable.

(c)     Post a bond, in form satisfactory to the Union, in multiples of $15,000 FOR EACH TEN (10) EMPLOYEES.

(d)     Employers approved to pay by check shall have the work week end on Tuesday and the paycheck must be given to the Employees on Thursday of the same week at or before quitting time.  Otherwise, payment must be made in cash on Friday before 3:30 P.M.

(e)     Employers shall remit a single check for all Local Union and National benefits to the Local Union Fringe Benefits office.

(f)     Employees shall receive pay receipts with each pay, showing name or social security number, hours worked, hours paid, specialty hours, and all deductions from the gross wages.

(g)     *ELECTRONIC TRANSFER OF PAYCHECKS*  - The union sanctions the use of electronic transfer of paychecks as an alternative to being paid at the worksite. Members who chose not to partake in electronic transfer will not be discriminated against. If charges of discrimination with regard to the transfer are filed against a Contractor by any Member, the Union will rescind this privilege.

**SECTION 12.**

(a)     A check issued by the Employer which cannot be cashed on the date the check is issued, or if the Employee is not paid cash by 3:30 PM on Friday, the Employer shall be liable for one day's pay for each calendar day the Employee waits for cash, after the Employee notifies the Union Office or Business Representative.  When paying by check on the jobsite, the Employer shall establish credit in the nearest bank to the jobsite, in order that the check can be readily cashed by the Employee.

(b)     Employers shall obtain applicable State Disability Benefits for each covered employee when working in Local 38's jurisdiction.  Premiums for same may be deducted from employee's wages as allowed by State Law.

**SECTION 13.** Employer agrees that upon receipt of a validly executed authorization form, it will deduct from the authorizing Employee's pay, the amount of working assessments so indicated and forward same to the Union.

## ARTICLE IX

**SECTION 1.** Sheet Metal Workers covered by this Agreement shall provide for themselves all necessary hand tools.

**SECTION 2.** Sheet Metal Workers covered by this Agreement shall not be permitted or required as a condition of employment to furnish the use of automobile or other conveyance to transport tools, men, equipment or materials from shop to job, from job to job, or from job to shop; facilities for such transportation to be provided by the Employer. This provision shall not restrict the use of an automobile or other conveyance to transport its owner and personal tools from home to shop or job at starting time or from shop or job to home at quitting time.

**SECTION 3.** *PROTECTIVE EQUIPMENT*

Employers shall furnish protective equipment, such as but not limited to, gloves, goggles for welding and burning, as well as foul weather gear, such as weatherproof raincoat, hat, boots and gloves, when employees are required to work in inclement weather. When employees work with fiberglass duct, employers are to furnish protective clothing.

**SECTION 4.** *EXPLOSIVE TOOLS*

Explosive tools may be used only in accordance with all State, Federal OSHA and Industry Safety Requirements. All Sheet Metal Workers will be certified by a special training program conducted by the Craft Training Fund.

**SECTION 5.** *HEATED SHANTIES*

Employers shall provide suitable heated areas on all jobsites where there are over seven (7) workers employed for thirty (30) days or more during the months of November through March.

**SECTION 6** *INSTALLATION OF DUCTWORK/MANIFOLDING*

Safety conditions shall be observed when hoisting by chain hoist, duct lifts, well wheels, come-alongs, etc. The maximum length of duct to be lowered, lifted or hoisted shall be eighteen (18) feet. All side taps shall be no greater than twelve (12) inches. If the duct has a width or diameter of 36" or more, a minimum of two duct lifts or hi-jacks must be used - all lifting capacities must be observed.

**SECTION 7.** *VEHICLES*

Employers shall have the name of the Corporation or Company clearly and legibly painted or stenciled on all of their vehicles bearing commercial license plates.

**SECTION 8.** *LOSS OF TOOLS*

The Employer shall reimburse all Employees against loss of tools and clothing on the jobsite due to robbery when locked in a gang box or secured in a room where forced entry can be proven, or loss through fire or explosion.

### ARTICLE X

The Union and the Employer, whether party to this Agreement independently or as a member of a multi-employer bargaining unit, agree to utilize and be bound by this Article. The Trustees of the Local 38 Funds, may, at their discretion, utilize the grievance procedure to collect unpaid contributions of contributing Employers.

**SECTION 1.** Grievances of the Employer or the Union, arising out of interpretation or enforcement of this Agreement, shall be settled between the Employer directly involved and the duly authorized representative of the Union, if possible. Both parties may participate in conferences through representatives of their choice.

To be valid, grievances must be raised within thirty (30) calendar days following the occurrence giving rise to the grievance or, if the occurrence was not ascertainable, within thirty (30) calendar days of the first knowledge of the facts giving rise to the grievance.

**SECTION 2.** Grievances not settled as provided in Section 1 of this Article may be appealed by either party to the Local Joint Adjustment Board where the work was performed or in the jurisdiction of the Employer's home local and such Board shall meet promptly on a date mutually agreeable to the members of the Board, but in no case more than fourteen (14) calendar days following the request for its services, unless the time is extended by mutual agreement of the parties or Local Joint Adjustment Board. The Board shall consist of representatives of the Union and the Local Employers' Association and both sides shall cast an equal number of votes at each meeting. The Local Employers' Association, on its own initiative, may submit grievances for determination by the Board as provided in this Section. Except in the case of a deadlock, a decision of a Local Joint Adjustment Board shall be final and binding upon all parties.

Notice of appeal to the Local Joint Adjustment Board shall be given within thirty (30) days after the termination of the procedures prescribed in Section 1 of this Article, unless the time is extended by a mutual agreement of the parties.

**SECTION 3.** Grievances not disposed of under the procedure prescribed in Section 2 of this Article because of a deadlock or failure of such Board to act, may be appealed jointly or by either party to a Panel, consisting of one (1) representative appointed by the Labor Co-Chairman of the National Joint Adjustment Board and one (1) representative appointed by the Management Co-Chairman of the National Joint Adjustment Board. Appeals shall be mailed to the National Joint Adjustment Board ∗ Notice of appeal to the Panel shall be given within thirty (30) days after termination of the procedures prescribed in Section 2 of this Article. Such Panel shall meet promptly but in no event more than fourteen (14) calendar days following receipt of such appeal, unless such time is extended by mutual agreement of the Panel members. Except in a case of deadlock, the decision of the Panel shall be final and binding.

Notwithstanding the provisions of Paragraph 1 of this Section, an employer who was not a party to the Labor Agreement of the area in which the work in dispute is performed, may appeal the decision of the Local Joint Adjustment Board from that area, including a unanimous decision and request a Panel hearing as set forth in Section 3 of this Article, providing such appeal is approved by the Co-Chairman of the National Joint Adjustment Board.

**SECTION 4.** Grievances not settled as provided in Section 3 of this Article, may be appealed jointly or by either party to the National Joint Adjustment Board. Submissions shall be made and decisions rendered under such procedures as may be prescribed by such Board. Appeals to the National Joint Adjustment Board shall be submitted within thirty (30) days after termination of the procedures described in Section 3 of this Article. The procedural rules of the National Joint Adjustment Board are incorporated in this Agreement as though set out in their entirety. (Copies of the procedures may be obtained from the National Joint Adjustment Board.*)

**SECTION 5.** The Local Joint Adjustment Board Panel and the National Joint Adjustment Board are empowered to render such decisions and grant such relief to either party, as they deem necessary and proper, including awards of damages or other compensation.

**SECTION 6.** In the event of non-compliance within thirty (30) calendar days following the mailing of a decision of a Local Joint Adjustment Board Panel or the National Joint Adjustment Board, a local party may enforce the award by any means including the proceedings in a court of competent jurisdiction in accord with applicable state and federal law. If the party seeking to enforce the award prevails in litigation, such party shall be entitled to its costs and actual attorney's fees in addition to such other relief as is directed by the courts.

**SECTION 7.** Failure to exercise the right of appeal at any step thereof within the time limit provided therefore shall void any right of appeal applicable to the facts and remedies of the grievances involved. There shall be no cessation of work by strike or lockout during the pendency of the procedures provided for in this Article, except in case of deadlock. The decision of the National Joint Adjustment Board shall be final and binding.

**SECTION 8.** In addition to the settlement of grievances arising out of interpretation or enforcement of this Agreement as set forth in the preceding sections of this Article, any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this Agreement shall be settled as hereinafter provided:

(a)     Should the negotiations for a renewal of this Agreement or negotiations regarding a wage/fringe reopener become deadlocked in the opinion of the Union representative(s) or of the Employer's representative(s), or both, notice to that effect shall be given to the National Joint Adjustment Board.

If the Co-Chairmen of the National Joint Adjustment Board believes the dispute might be adjusted without going to final hearing before the National Joint Adjustment Board, each will then designate a Panel representative who shall proceed to the locale where the dispute exists as soon as convenient, attempt to conciliate the differences between the parties and bring about a mutually acceptable agreement. If such Panel representatives or either of them conclude that they cannot resolve the

dispute, the parties thereto and the Co-Chairmen of the National Joint Adjustment Board shall be promptly so notified without recommendation from the Panel representatives. Should the Co-Chairmen of the National Joint Adjustment Board fail or decline to appoint a Panel member or should notice of failure of the Panel representatives to resolve the dispute be given, the parties shall promptly be notified so that either party may submit the dispute to the National Joint Adjustment Board.

In addition to the mediation procedure set forth above or as an alternate thereto, the Co-Chairmen of the National Joint Adjustment Board may each designate a member to serve as a Subcommittee and hear the dispute in the local area. Such Subcommittees shall function as arbitrators and are authorized to resolve all or part of the issues. They are not, however, authorized to deadlock and the matter shall be heard by the National Joint Adjustment Board in the event a Subcommittee is unable to direct an entire resolution of the dispute.

The dispute shall be submitted to the National Joint Adjustment Board pursuant to the rules as established and modified from time to time by the National Joint Adjustment Board. The unanimous decision of said Board shall be final and binding upon the parties, reduced to writing, signed and mailed to the parties as soon as possible after the decision has been reached. There shall be no cessation of work by strike or lockout unless and until said Board fails to reach a unanimous decision and the parties have received written notification of its failure.

(b)  Any application to the National Joint Adjustment Board shall be upon forms prepared for that purpose subject to any changes, which may be decided by the Board from time to time. The representatives of the parties who appear at the hearing will be given the opportunity to present oral argument and to answer any questions raised by members of the Board. Any briefs filed by either party including copies of pertinent exhibits shall also be exchanged between the parties and filed with the National Joint Adjustment Board at least twenty-four (24) hours in advance of the hearing.

(c)  The National Joint Adjustment Board shall have the right to establish time limits, which must be met with respect to each and every step or procedure contained in this Section. In addition, the Co-Chairmen of the National Joint Adjustment Board shall have the right to designate time limits which will be applicable to any particular case and any step therein which may be communicated to the parties by mail, telegram/fax, e-mail, or telephone notification.

(d)  Unless a different date is agreed upon mutually between the parties or is directed by the unanimous decision of the National Joint Adjustment Board, all effective dates in the new Agreement shall be retroactive to the date immediately following the expiration date of the expiring agreement.

*_All correspondence to the National Joint Adjustment Board shall be sent to the following address:   National Joint Adjustment Board, PO Box 220956, Chantilly, VA 22022-0956, or 4201 LaFayette   Center Drive, Chantilly, VA 22021-1209._

## ARTICLE XI

**SECTION 1.** Apprentices shall be under the supervision and control of a Joint Apprenticeship and Training Committee composed of six (6) members, three (3) of whom shall be selected by the Employer, and three (3) by the Union. Said Joint Apprenticeship and Training Committee shall formulate and make operative such rules and regulations as they may deem necessary and which do not conflict with the specific terms of this Agreement, to govern eligibility registration, education, transfer, wages, hours, working conditions of duly qualified apprentices and the operation of an adequate apprentice system to meet the needs and requirements of the trade. Said rules and regulations when formulated and adopted by the parties hereto shall be recognized as part of this Agreement.

**SECTION 2.** The Joint Apprenticeship and Training Committee designated herein shall serve for the life of this Agreement, except that vacancies in said Joint Apprenticeship and Training Committee caused by resignation or otherwise, may be filled by either party hereto and it is hereby mutually agreed by both parties hereto, that they will individually and collectively cooperate to the extent that duly qualified apprentices be given every opportunity to secure proper technical and practical education experience in the trade, under the supervision of the Joint Apprenticeship and Training Committee.

**SECTION 3.** It is the understanding of the parties of this Agreement that the funds contributed by signatory employers to the International Training Institute and any Local Joint Apprenticeship and Training Committee (Local JATC) will not be used to train Apprentices or Journeymen who will be employed by Employers in the Sheet Metal Industry not signatory to a collective bargaining agreement providing for contributions to the International Training Institute and a Local JATC. Therefore, the trustees of the International Training Institute and Local JATC shall adopt and implement a Scholarship Loan Agreement Program which will require Apprentices and Journeymen employed by signatory Employers to repay the cost of training either by service following training within the union sector of the industry or by actual repayment of the cost of training if the individual chose to work for a non-signatory Employer in the Sheet Metal Industry. The cost of training shall include the reasonable value of all International Training Institute and Local JATC materials, facilities and personnel utilized in training. If a Local JATC does not implement the Scholarship Loan Agreement, the Local JATC shall be prohibited from utilizing International Training Institute materials and programs.

**SECTION 4.** It is hereby agreed that the Employer shall apply to the Joint Apprenticeship and Training Committee and Joint Apprenticeship and Training Committee shall grant apprentices on the basis of :

| | |
|---|---|
| i. | 2:1 with unemployment of 85 or less, for three (3) consecutive months |
| ii. | 3:1 with unemployment of 86 to 200 |
| iii. | 4:1 with unemployment exceeding 200 |

However, an Employer will not be entitled to a new apprentice if the Employer has an apprentice on layoff for lack of work.

**SECTION 5.** Apprentices shall not be in charge of work on any job and shall work under the supervision of a Journeyman until apprenticeship terms have been completed and they have qualified as Journeymen.

**SECTION 6.** Wage scale for Apprentices shall be established and maintained on the following percentage basis of the established wages of the Journeymen Sheet Metal Workers per applicable wage sheet:

| | | |
|---|---|---|
| First Year | -- First half 40% -- Second half 45% | Third Year -- First half 60% -- Second half 65% |
| Second Year | -- First half 50% -- Second half 55% | Fourth Year -- First half 70% -- Second half 75% |

**SECTION 7.** Concentrated Apprenticeship Training Program will be set forth by the Craft Training Fund Trustees and all first year Apprentices will be probationary.

## ARTICLE XII

**SECTION 1.** *CLASSIFIED WORKERS RATIO*

(a)    One (1) Classified Worker for any Employer who employees an Apprentice.

(b)    Two (2) Classified Workers for any Employer who employees at least three (3) Apprentices.

(c)    Thereafter, ratio of one (1) Classified Worker for each additional three (3) Apprentices.

Classified workers may perform any work covered by Article I and will work under the supervision of a Journeyman. The wage rate will not exceed 35% of the Journeyman wage rate. (See applicable wage rate sheet).

In the event the Employer is entitled to a Classified Worker and the Union fails to comply with the Employer's written request to furnish such worker within forty-eight (48) hours, the Employer may directly hire such employees and refer them to the Union.

**SECTION 2.** *FUNDS*

1.    *OBLIGATION OF EMPLOYER TO CONTRIBUTE.* For all work performed pursuant to the terms of this Agreement, an Employer shall make contributions to the various Sheet Metal Workers' Local 38 Fringe Benefit Funds and other designated funds as described herein.

2.    *SHEET METAL WORKERS' LOCAL 38 FRINGE BENEFIT FUNDS.* The Sheet Metal Workers' Local 38 Fringe Benefit Funds ("Local 38 Funds") are as follows: Sheet Metal Workers' International Association Local 38 Vacation Fund; Sheet Metal Workers' International Association Local 38 Insurance and Welfare Fund; Sheet Metal Workers' Local 38 Labor Management Committee & Trust Fund; Sheet Metal Workers' International Association Local Union 38 Profit Sharing Fund; and Sheet Metal Workers' Local 38 Craft Training Fund.

The Local 38 Funds shall be administered by an equal number of representatives of the Employers and Union, in accordance with the respective Agreements and Declarations of Trust pursuant to which they are established. Any Employer signatory to this Agreement, whether or not a member of the Association, authorizes the Association to enter into appropriate Trust Agreements necessary for the administration of the Local 38 Funds and agrees to accept the Trustees appointed by the Association (and their successors) as its representatives and hereby waives all notice of such appointments and ratifies all actions already taken or to be taken by such Trustees within the scope of their authority.

The Agreements and Declarations of Trust establishing the Local 38 Funds shall conform to all requirements by law. The parties agree that all of the terms and conditions of the Agreement and Declarations of Trust and the Plans of the Local 38 Funds provided for in this Agreement are incorporated as if fully set forth herein.

In compliance with Section 302 of the National Labor Relations Act, 29 U.S.C., Section 186, the Trustees of the Local 38 Funds shall accept contributions only from employers who are bound either to this collective bargaining agreement or to a written agreement with the Trustees of the respective Funds specifying the basis upon which contributions to the Local 38 Funds are to be made.

3. *CONTRIBUTIONS.* Employers shall contribute to the following funds on behalf of their Employees according to the wages and fringe benefits negotiated by the parties ("the applicable wage sheet"), with the exception of Sundays and Holidays where all Benefits are waived in lieu of total hourly package being paid as wages:

    (a)    Sheet Metal Workers' International Association Local 38 Vacation Fund
    (b)    Sheet Metal Workers' International Association Local 38 Insurance and Welfare Fund
    (c)    Sheet Metal Workers' Local 38 Labor Management Committee & Trust Fund
    (d)    Sheet Metal Workers' Local 38 Profit Sharing Fund
    (e)    Sheet Metal Workers' Local 38 Craft Training Fund
    (f)    Sheet Metal Workers' National Pension Fund
    (g)    International Training Institute (I T I)
    (h)    National Energy Management Institute (NEMI)
    (i)    Sheet Metal Occupational Health Institute, Inc. (SMOHIT)
    (j)    Sheet Metal Scholarship Fund
    (k)    Stabilization Agreement of the Sheet Metal Industry (SASMI)

Contributions, except for vacation, are based upon hours worked. The parties agree that in accordance with procedures adopted by the Sheet Metal Workers' International Association Local 38 Vacation Fund ("Vacation Fund") and Sheet Metal Workers' International Association Profit Sharing Fund ("Profit Sharing Fund"), a participant may elect to forego contributions to the Vacation Fund to which he/she is otherwise entitled, and in return have such monies contributed on his/her behalf to the Sheet Metal Workers' International Association Profit Sharing Fund, with the understanding that such contributions will be made on an after tax basis.

Employer contributions become vested plan assets at the time they become due and owing to the

above-referenced Funds. Title to all contributions paid into and/or due and owing such Funds shall be vested in and remain exclusively in the Fund Trustees.

4. *BILLING PROCEDURE*. Employers must report all hours worked (or the absence thereof) by Employees under this Agreement. The Funds office will provide contribution forms. Completed contribution forms must be received by the Funds office by the 7th day of the month following the month in which the hours are worked. The Funds office will bill the Employer based on the information reported on the contribution forms by the 14th day of the month following the month in which the hours were worked. The Employer must submit payment no later than the 20th day of the month following the month in which the hours were worked. New Employers engaging in collective bargaining with Local 38 shall be required to submit benefits weekly for a period of one (1) year.

5. In the event the Employer's contributions fail to meet the Employer's entire obligation and a shortage occurs, any moneys subsequently remitted and/or collected shall be applied to such funds as the Trustees may decide from time to time. Presently the Funds will be applied as follows: first to 100% of the outstanding balance of the first below listed Fund, and then 100% to the outstanding balance of the second listed Fund, and continuing in such manner to each successive Fund until such contributions have been exhausted:

   (a)    Sheet Metal Workers' International Association Local 38 Vacation Fund
   (b)    Work Assessment
   (c)    Sheet Metal Workers' International Association Local 38 Profit Sharing Fund
   (d)    Sheet Metal Workers' International Association Local 38 Insurance and Welfare Fund
   (e)    Sheet Metal Workers' Local 38 Craft Training Fund
   (f)    Sheet Metal Workers' Labor Management Committee & Trust Fund
   (g)    Sheet Metal Workers' National Pension Fund
   (h)    Sheet Metal Contractors' Industry Fund of Southeastern New York
   (i)    International Training Institute (I T I)
   (j)    National Energy Management Institute (NEMI)
   (k)    Sheet Metal Occupational Health Institute, Inc. (SMOHIT)
   (l)    Sheet Metal Scholarship Fund
   (m)    Stabilization Agreement of the Sheet Metal Industry (SASMI)

6. In the event an Employer fails to timely remit contributions as set forth in Article XII, Section 2 (4) Billing Procedure, the Union Business Manager shall have the right to remove all covered employees without notice to the Employer.

   Each Employer agrees that if contributions are not received (postmarked by such date is not sufficient) by the Fund office as of the last working day of the month in which such contributions were due, it will be assessed liquidated damages upon the delinquency at the rate of 3% over the prime rate as established by the Bank of New York located in New York, New York, on the date the delinquency first occurs (i.e., the due date set forth in Article XII, Section 2 (4) Billing Procedure, and shall be computed for each day the delinquency exists. The liquidated damages are based on the length of time contributions are overdue, the amount of delinquent contributions, the date payment is actually made, and the administrative and other office

18

expenses required to collect the delinquent contributions. Liquidated damages hereunder are not a penalty. The liquidated damages shall be calculated in accordance with rules and regulations adopted by the Trustees of Local 38 Funds and are incorporated as if set forth herein. Acceptance of any contributions by the Funds, Trustees, or Administrator shall not constitute a waiver of the right to assess liquidated damages if such contributions were paid after the due date.

Each Employer agrees that if contributions are not timely remitted as set forth in Article XII, Section 2 (4) Billing Procedure, it shall pay all legal expenses (including attorneys fees), accounting expenses or other costs which can be calculated with reasonable certainty incurred by the Funds in pursuing collection of delinquent contributions.

The above damages are cumulative and in addition to, and not in lieu of, any other legal rights and remedies available to the Funds under ERISA or other applicable law, whether or not legal action is commenced to collect the delinquent contributions.

Whenever either the Union or the Funds seeks to collect delinquent Employer contributions or seeks to require any Employer to submit to an audit, suit may be brought in a court of competent jurisdiction. In lieu of the forgoing and in the sole discretion of the Funds or the Union, either the Union or the Funds may utilize the procedures of Article X when seeking to collect delinquent Employer contributions or when seeking to require any Employer to submit to an audit.

7. Out of town Contractors will pay Local and National Benefits weekly.

8. Employers shall make and keep available any and all records pertaining to covered Employees, for inspection, examination and/or copying by the Trustees.

9. Local Contractors shall timely remit contributions as set forth in Article XII, Section 2 (4) Billing Procedure, by any of the following means:

   (a) Weekly payments directly to the Funds and/or Union Office.

   (b) Monthly payments to the Funds and/or Union Office where payment has been secured by either:

      (1)   Transferable savings account or Certificates of Deposit duly assigned to the Funds and/or Union in such form that it may be cashed or collected by the Funds, in amounts at least equal to the Surety Bonds under alternative (2).

      (2)   Surety Bond of the licensed insurance company, in form acceptable to the Funds, and containing the customary provision for cancellation only following reasonable notice to the Funds and the Union, in the following amounts - (subject to review by Labor/Management Committee) IN MULTIPLES OF $15,000.00 FOR EACH TEN (10) ADDITIONAL EMPLOYEES

(c) Employers whose Funds check is returned twice in a course of six (6) months or whose employees are removed for non-payment of benefits, shall make weekly payments of funds for a period of six (6) months.

10.   *WAGE INCREASES* - Effective:

| | |
|---|---|
| May 1, 2002 | $3.00 per hour |
| July 1, 2003 and every July 1st thereafter until and including July 1, 2010 | $2.50 per hour |
| July 1, 2011 – April 30, 2012 | $2.00 per hour |

## ARTICLE XIII

**SECTION 1.**  Pursuant to Federal or State law, any provision of the Agreement shall be found by a court of competent jurisdiction to be void or unenforceable, all of the other provisions of this Agreement shall remain in full force and effect.  The parties agree to meet and negotiate a substitute provision.  If negotiations are unsuccessful, the issue may be submitted for resolution by either party pursuant to Article X, Section 8 of this Agreement.

**SECTION 2.**  Notwithstanding any other provision of this Article, or any other Article of this Agreement, whenever an amendment to the Standard Form of Union Agreement shall be adopted by the sponsoring national associations, any party to this Agreement, upon the service of notice to all parties hereto, shall have this Agreement reopened thirty (30) days thereafter, for the sole and only purpose of attempting to negotiate such amendment or amendments into this Agreement for the duration of the term hereof.  There shall be no strike or lockout over this issue.

**SECTION 3.**  Each Employer hereby waives any right it may have to repudiate this Agreement during the term of this Agreement, or during the term of any extension, modification or amendment of this Agreement.

**SECTION 4.**  This Agreement shall become effective on the 1st day of May, 2002, and shall remain in effect until April 30, 2012, and shall continue in force from year to year thereafter unless written notice of reopening is given not less than ninety (90) days prior to the expiration date.

In the event such notice of reopening is served, this Agreement shall continue in force and effect until conferences relating thereto have been terminated by either party by written notice, provided, however, that, if this Agreement contains Article X, Section 8, it shall continue in full force and effect until modified by decision of an arbitrator under the procedures set forth under Article X, Section 8.

**SECTION 5.**  The undersigned Employer has examined and agrees to comply with all the existing terms and conditions of this Collective Bargaining Agreement.  It is also agreed by the Employer that any notice given by the Union to the Association pursuant to the provisions of this Collective Bargaining Agreement shall be notice to the Employer and shall have the same legal force and effect as though it were served upon the Employer personally.  The Employer additionally agrees that, unless it notifies the Union at least 150 days prior to the termination date of this Collective Bargaining Agreement or any subsequent Agreements, the Employer will be bound by and adopt all

Agreements reached by the Union and the Association during subsequent negotiations. Finally, the Employer will notify the Union a minimum of thirty (30) days prior to any change in company ownership or address, and will notify the Union within 24 hours of any formal change of company name.

## ARTICLE XIV

The Employer agrees to designate an agent for the receipt of work assessment authorizations. Such authorizations shall be in the form which is set out in Appendix "A" which is attached to and made a part of this Agreement. All dues deduction authorizations which have been voluntarily and individually executed by the Employees shall be deposited with said agent. Upon notification of receipt of such authorizations, the Employers shall deduct the current allocated sum per hour as working dues for all hours worked, whether on a straight-time or overtime basis, from the wages of Employees covered by said authorizations and shall remit said sums to an agent designated by the Association for transmittal to the Local Union. The Union shall indemnify and save the Association and/or its members harmless against any and all claims, demands, suits and other forms of liability that may arise out of or by reason of an Employer's deduction of working dues pursuant to this Section.

IN WITNESS WHEREOF, the parties hereto affix their Signatures and seal this _____1st_____

day of ___July___, 2004.

___D.F.S H.V.A.C___

(Name of Association or Contractor) – Please Print

By _____      ___Owner___
        Officer's Signature                    Title

PRINT OFFICER'S NAME ___Paul J Grobelny___

ASSOCIATION/CONTRACTOR'S ADDRESS ___14 Everett RD.___

___Carmel N.Y. 10512___

TELEPHONE ___845-228-2826___    FAX ___845-228-5151___

LOCAL UNION NO. 38 OF SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION

BY _____      ___President/Business Mgr.___
        Local Union Officer's Signature            Title

PRINT OFFICER'S NAME ___Gino J. Colombo___

21